# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JONNIE H. WHITE,**

     **Petitioner,**                    **CASE NO. 2:10-CV-70**
                                      **CRIM. NO. 2:05-CR-174**
                                      **JUDGE ALGENON L. MARBLEY**
     **v.**                            **Magistrate Judge E.A. PRESTON DEAVERS**

**UNITED STATES OF AMERICA,**

     **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant amended motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the instant amended petition, Respondent's return of writ, Petitioner's reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> White was convicted by a jury on June 14, 2006, of conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846, and possession with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. § 2, based on his activities in the Southern District of Ohio in 2005. On October 13, 2006, White was sentenced to 293 months in prison, five years supervised release and a $200 special assessment.
>
> A. Pretrial Proceedings
>
> White retained three attorneys during the proceedings and attempted to plead guilty twice. White's first plea agreement was filed with the district court on February 16, 2006. In that agreement, White agreed to plead guilty to the conspiracy count and further agreed that the

relevant conduct attributable to him as part of the conspiracy was 486.69 grams of cocaine base. This agreement also stated the government's position that White should receive a two-level enhancement for possession of a firearm in connection with the drug conspiracy pursuant to U.S.S.G. § 2D1.1(b), a two-level enhancement for possession of a firearm in connection with the drug conspiracy pursuant to U.S.S.G. § 2D1.1(b), and a two-level enhancement for having a supervisory role in the conspiracy pursuant to U.S.S.G. § 3B1.1. White reserved the right to contest those enhancements at the sentencing hearing. Finally, the plea agreement provided for a potential reduction of three offense levels for acceptance of responsibility, provided he continued to accept responsibility through sentencing.

On February 28, 2006, at the change of plea hearing, White indicated that he did not wish to go through with his guilty plea, and the written plea agreement was withdrawn. White's trial was rescheduled for April 10, 2006.

On March 22, 2006, a second plea agreement was filed. In this second agreement, White agreed to plead guilty to the conspiracy count, and agreed that the relevant conduct was 486.69 grams of cocaine base, for an offense level of 34 under the applicable advisory guideline. This time the government did not reserve the right to produce additional evidence concerning relevant conduct or to seek enhancements for possession of a firearm or for a supervisory role.

The change of plea hearing was held the same day. White agreed to enter his guilty plea before the magistrate judge. The magistrate judge refused to accept the guilty plea however, after White indicated that he was "not really" satisfied with counsel's advice and representation because counsel was doing only what the prosecutor told him to do, and that he was pleading guilty because he felt like his attorney was not putting any real effort into his case and "fighting for my rights." White explained that the government's witness, White's girlfriend and codefendant Shawnda Cordell, would blame him for all of the drugs sold, although she was a known drug dealer before meeting White. White stated that he believed he had "some defenses."

Counsel's motion to withdraw was granted and White retained his third attorney, Tom Warshaw, who was granted leave to appear pro hac vice to represent White for trial.

B. Trial

Trial began on June 12, 2006. Detective Chad Wallace of the Gallipolis, Ohio Police Department testified that on March 25, 2005, he stopped a vehicle driven by White after it failed to stop at three consecutive stop signs. Cordell was a passenger. Wallace knew Cordell was on probation. As part of her probation, she was subject to search at any time. Wallace searched Cordell and the vehicle but found no drugs. Cordell was then transported to her home, 193 Windsor Drive, Gallipolis, Ohio, for a further search. There the officers found 27.44 grams of cocaine base, inside a box which was hidden in a large bag of dog food next to the refrigerator. The crack cocaine was packaged in 12 to 13 individual packets. The officers also found a small bag of crack cocaine on top of the refrigerator, a small digital scale, and $14,566 in U.S. currency. No fingerprints were found.

On July 22, 2005, Jerry Abbott, a cooperating informant, made a controlled buy of crack cocaine from Cordell. Cordell confirmed the sale, although she stated that the crack did not come from White, who was in Detroit, but from her cousin.

On July 23, 2005, at 1:30 a.m., Trooper Risner observed a vehicle traveling eastbound on U.S. 35 at an extremely slow speed. He ran a file check on the vehicle and found that it was registered to Cordell. He also determined that Cordell had an outstanding arrest warrant for a probation violation, so he made a traffic stop of her vehicle. Risner took Cordell into custody. White was a passenger. Cordell testified that she was returning with White from Detroit when she was arrested.

The police executed a search warrant on the couple's mobile home located at 2657 State Route 218, Gallia County, Ohio, on July 25, 2005. White and Cordell were present. Officers discovered 486.69 grams of cocaine base in the charcoal grill next to the back porch of the mobile home. The crack cocaine was divided into 23 individual vacuums inside a vacuum sealed package. The officers also found digital scales with crack residue, $3643 in currency, and a 9mm semiautomatic pistol, with a magazine containing 16 live rounds of ammunition. No fingerprints of any kind were found on the seized evidence.

Cordell, who was charged with White, pleaded guilty and agreed to cooperate in return for a reduced sentence. Cordell testified that she was living with White in the mobile home on July 25, 2005. She said that she had known White since October 2003, and began living with

him in December 2003/January 2004. To Cordell's knowledge, White was not employed, and he traveled to and from Detroit to Gallipolis for several weeks at a time in each location.

Cordell stated that after about a year she discovered that White was selling crack. Eventually she began making deliveries of the crack to White's customers. Sometimes a customer would come to one of their residences to pick up the crack.

Cordell testified the $14,566 seized in March 2005 belonged to White and came from drug sales. She testified that the crack in the dog food bag belonged to White, as did the crack in the grill.

Three of White's crack cocaine customers also testified-Jerry Abbot and his wife Teresa, and John Rees. All three testified that they made numerous purchases from "Cash," or White, or one of his dealers.

On June 14, 2006, the jury found White guilty of one count of conspiracy to distribute cocaine base and one count of possession with intent to distribute cocaine base. The jury answered special interrogatories determining that the quantity of crack cocaine involved in both charges was at least 50 grams of cocaine base. (Id.)

After the jury returned the verdict, White made an obscene gesture at the jury and an obscene remark to the government attorney.

C. Sentencing

White's presentence report (PSR) set his advisory guideline sentencing range at 292-365 months, based on an offense level of 38 and a criminal history category of III. [FN1] The sentencing range was based on the relevant conduct of 853.06 grams of cocaine base, which corresponded to an offense level of 36. Added to that was a two-level enhancement of White's supervisory role of Cordell and an unindicted coconspirator known as Greg.

> FN1. The 2005 edition of the U.S. Sentencing Guidelines Manual was used

White's criminal history category was the result of one point for his 1997 conviction for speeding, obstruction, no license, giving a false name and false birth date in Cobb County Georgia; two points for a conviction of carrying a concealed weapon in 2001 in Detroit,

Michigan; one point for a conviction of providing false information and drug abuse in Gallia County, Ohio; and one point for his conviction for possession of marijuana in 2004 in Gallia County; Ohio. This amounted to five criminal history points, which is a criminal history category III. In addition, the PSR listed numerous other arrests not counted for purposes of assessing criminal history points.

White filed one objection, related to his criminal history category, and requested a downward departure on the ground that category III over-represented the true nature of his criminal history.

White did not make any objections at the sentencing hearing to the factual findings in the PSR or to the guidelines range, and the district court adopted both. At sentencing White argued that the offenses were overstated based on the 100/1 crack to cocaine powder ratio and that his criminal history score over-represented the true nature of his past. The district court rejected the latter contention because of White's "rather lengthy criminal past." The court also held that it had discretion to consider the crack/powder cocaine differential, and exercised that discretion, reducing White's advisory guideline range from an offense level of 38 to 36. This reduction decreased Whites' guideline sentencing range to 235 to 293 months. ( Id.) After reducing White's advisory guideline range two levels, the court considered the factors outlined in 18 U.S.C. § 3553(a), and sentenced White to 293 months' imprisonment.

*United States v. White*, 308 Fed.Appx. 910, unpublished, 2009 WL 196548, at *1-3 (6th Cir. Jan. 28, 2009).

On appeal [Petitioner] argues the district court erred: 1) by not allowing him to plead guilty; 2) in assigning his offense level calculation at 38; 3) in denying him a reduction for acceptance of responsibility; 4) by making judicial factfindings at sentencing of the amount of crack cocaine; and 5) by imposing an unreasonable sentence. Lastly, he seeks a remand for resentencing based on the recent amendments to the advisory guidelines concerning the crack/powder cocaine ratio.

*Id.* at 1. On January 28, 2009, the Court of Appeals affirmed the judgment of the this Court. *Id.*

On June 1, 2009, the United States Supreme Court denied Petitioner's petition for a *writ of*

*certiorari. White v. United States,* 129 S.Ct. 2750 (2009). On August 17, 2011, the Court denied Petitioner's motion to reduce his sentence pursuant to amendments in the United States Sentencing Guidelines regarding the sentencing disparity between crack and cocaine. Doc. 156.

On January 25, 2010, Petitioner filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. On October 3, 2010, the Court granted Petitioner's request to amend his petition. Doc. 152. In his petition, as amended, Petitioner asserts as follows:

1. Counsel was constitutionally ineffective during the plea stage by virtue of him failing to effectively negotiate a plea.

2. Counsel was ineffective by his actions in calling Officer John Perry as a defense witness for White.

3. Counsel was constitutionally ineffective for his failure to move for a judgment of acquittal at the close of the government's case based on failure of proof of venue and allowing the Court to take judicial notice of said.

4. Counsel was constitutionally ineffective for his failure to make an opening statement.

5. Trial counsel was ineffective for agreeing with the Court and the prosecution that the witnesses against White would not be allowed to say that they received inculpatory information from White while in jail.

6. Appellate counsel was constitutionally ineffective for his failure to properly raise the issue that Amendment 709 of USSG applied to White's sentence and that he should be resentenced based on uncountable misdemeanor conviction pursuant to § 4A1.2(c)(1).

7. Counsel was constitutionally ineffective for his failure to present a defense for White.

8. Trial counsel was constitutionally ineffective for his failure to object to the prosecutor's adducement [sic] of testimony that was outside and beyond the scope of

the conspiracy and presenting a case predicated on said.

9. The cumulative effect of all the errors committed by counsel deprived White of a fair trial.

10. Counsel was ineffective for his failure to investigate Officer John and determine that he was not a corrupt cop.

It is the position of the Respondent that Petitioner's claims are without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In this habeas corpus petition, Petitioner raises various claims of ineffective assistance of counsel. In Strickland v. Washington, the Supreme Court reiterated that the right to counsel guaranteed by the Sixth Amendment is the "right to effective assistance of counsel." 466 U.S. 668, 686 (1984.) To prevail on a complaint of ineffective assistance of counsel, a petitioner must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Scrutiny of defense counsel's performance must be "highly deferential." *Id.* at 689.

Given the difficulties "inherent" the analysis of whether an attorney's performance was constitutionally deficient,"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id.* Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 692. A petitioner, therefore,

must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id.* at 693. To do so, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781-82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985)." "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). The Court of Appeals for the Sixth Circuit has identified the following considerations that the Court must take into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.1999). This list is not exhaustive and need not produce a certain "score." *Id*. at 428.

## CLAIM ONE

In claim one, Petitioner asserts that he was denied effective assistance of counsel because his attorney failed to negotiate a guilty plea on his behalf or file a motion to have his guilty plea reinstated. Petitioner alleges that he specifically advised his Attorney Thomas Warshaw, the fourth of his retained attorneys in this case, that he wanted to plead guilty under the terms of the second plea offer extended by the prosecutor and did not want a jury trial. Petitioner alleges that he requested Attorney Warshaw to approach the prosecutor and request reinstatement of his second guilty plea. According to Petitioner, defense counsel advised him he had a good case and forced Petitioner to proceed to jury trial in lieu of pleading guilty, resulting in a greater sentence than Petitioner would have received had he pleaded guilty.

> Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart,* 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill,* 474 U.S. at 58, 106 S.Ct. 366. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for

counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer,* 263 F.3d 542, 547- 48 (6th Cir. 2001) (citing *Turner v. Tennessee,* 858 F.2d 1201, 1206 (6th Cir. 1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

*Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005). An attorney's failure to convey a plea offer satisfies the first prong of *Strickland*. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003)(citing *Turner v. State*, 858 F.2d 1201, 1205 (6th Cir. 1988)). A substantial disparity between the plea offer and the potential sentence exposure constitutes strong evidence that it is reasonably probable a properly advised defendant would have accepted the guilty plea offer. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003)(evidentiary hearing warranted as to whether defendant would have pleaded guilty where attorney failed to convey plea offer of five years and defendant sentenced to 156 months)(citing *Magana v. Hofbauer*, 263 F.3d 542, 552-53 (6th Cir. 2001)(difference between ten and twenty year sentence significant); *United States v. Day,* 969 F.2d 39 (3d Cir.1992) (ineffective assistance of counsel where counsel mistakenly advised the defendant he would receive ten, rather than twenty-two years, at sentencing and a plea offer of five years had been made); *United States v. Gordon,* 156 F.3d 376, 377- 81 (2d Cir. 1998) (disparity between ten-year sentence in plea offer and seventeen-and-a-half years the defendant received was objective evidence that a plea would have been accepted)). An attorney's failure to insist that his client accept the government's plea offer due to overwhelming evidence of guilt, however, does not constitute constitutionally ineffective assistance. *Smith v. United States,* 348 F.3d at 552.

The decision to plead guilty--first, last, and always--rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person

who will bear the ultimate consequence of a conviction.

*Id*. The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiations stage as follows:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Id.* at 553(citing *United States v. Day,* 969 F.2d 39, 43 (3d Cir. 1992)).

On February 13, 2006, while represented by counsel, Petitioner signed a plea agreement and acknowledged his guilt. Doc. 46. On February 28, 2006, however, at the hearing at which he was to change his plea to guilty, Petitioner withdrew his guilty plea. Petitioner stated, however, that he had discussed possible defenses he had to the charge as well as the maximum penalty he faced with his Attorney, Christopher Cooper. *Transcript,* February 28, 2006, at 6. On March 22, 2006, still represented by Attorney Cooper, Petitioner again signed an agreement with the Government and agreed to plead guilty. In relevant part, Petitioner agreed to plead guilty to conspiracy to distribute more than 50 grams of cocaine base. The parties agreed that the relevant conduct attributable to Petitioner for sentencing purposes was 486.69 grams of cocaine base, corresponding to an offense level of 34 under the United States Sentencing Guidelines, that the two-offense level firearm enhancement would not apply, that Petitioner had neither a supervisory role nor a minimal role in the offense charged, and that at the time of his guilty plea, the Government would recommend that Petitioner had accepted responsibility and timely notified the authorities of his intention to plead

guilty, warranting a three level reduction in his recommended sentence. Doc. 59. When he appeared for the subsequent hearing, however, Petitioner indicated he was not satisfied with the representation of his attorney:

> COURT: Are you satisfied with Mr. Cooper's advice and representation?
>
> DEFENDANT: No, not really. No.
>
> ***
>
> DEFENDANT: . . . I feel that, whatever [the Prosecutor] says, he listens to her. He. . . wasn't really putting no real effort into this case. So, really, that's why I'm pleading guilty, because I feel I don't have a lawyer that would be fighting for my rights.

*Transcript,* March 22, 2006, at 8. The Court advised Petitioner it could not accept his guilty plea if he was entering the guilty plea only because he did not believe his attorney would represent his interests at trial. *Id.* at 8-10. He stated:

> [The Prosecutor] has a witness, my codefendant, that's a known drug dealer, herself, that has six charges. So – and I have two charges. And by her having six charges, she is trying to blame it all on me, make me look like I'm the bad guy, like I'm a supervisor or whatever. . . . I just met Shawnda two years ago. When I met her, she's been doin' what she was doin', selling drugs. So, I don't know how [the Prosecutor] is going to try to make it seem like I'm the one that got her selling drugs and going to take her word, whatever she says, like her word is gold.
>
> I mean, I admit, yes, I sold drugs, but the stuff they found at Shawnda's house and all that, that was hers; I had nothing to do with that. So they're trying to put all that on me, while Shawnda gets set from.
>
> She wrote me and told me in her letter that she told [the Prosecutor] that I was the only guy from out of town that sell the drugs, period, in her town that she messes with. Just by me being at her house at that certain time, they're trying to put all that on me. And by Mr. Cooper not, not really fighting for me, why would I want to go to trial with a lawyer that really ain't stepping up to the plate and I lose and

12

get all this time and I won't be able to see my kids?

Why would I want to go to trial and lose and then get all this time
with a lawyer that really ain't putting all his effort into my case when
I can just go ahead and plead guilty and take the lesser charge?  So
I plead guilty.

*Id*. at 10-11.  When the Petitioner found a new lawyer to represent him, Attorney Cooper withdrew

as counsel of record.  *Id*. at 12; Docs. 61, 62.  On the first day of trial, June 12, 2006, Petitioner had

decided, of his own volition and free will, to proceed to jury trial rather than enter a guilty plea.

*Transcript*, June 12, 2006, at 8.

> COURT: Is it a knowing and intelligent decision to have a jury trial?
>
> DEFENDANT: Yes.
>
> COURT: Has anyone coerced you into having a jury trial?
>
> DEFENDANT: No, sir.

*Id.* at 8-9.

Petitioner made no mention of any interest in entering a guilty plea.

In view of Petitioner's failure to make known to the Court he had any interested in pleading

guilty, and his statements to the contrary, indicating he wanted a jury trial, his allegation now that

his attorney coerced him into proceeding to trial and that he wanted to enter a guilty plea is

disingenuous and not worthy of credit.

> [T]he representations of the defendant, his lawyer, and the prosecutor
> at [the guilty plea hearing], as well as any findings made by the judge
> accepting the plea, constitute a formidable barrier in any subsequent
> collateral proceedings. Solemn declarations in open court carry a
> strong presumption of verity. The subsequent presentation of
> conclusory allegations unsupported by specifics is subject to
> summary dismissal, as are contentions that in the face of the record
> are wholly incredible. *Machibroda, supra*, 368 U.S. at 495-496, 82
> S.Ct., at 514 (s 2255); *Price v. Johnston, supra*, at 334 U.S. 266,

286-287, 68 S.Ct. 1049, 1060-1061, 92 L.Ed. 1356 (s 2243).

*Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).  Petitioner denied at the time of trial, that anyone had coerced him into proceeding to jury trial.  His allegations to the contrary in these proceedings, are unworthy of belief.

Claim one is without merit.

## CLAIMS TWO AND TEN

In claim two, Petitioner asserts that he was denied effective assistance of trial because his attorney called Captain John Perry as a defense witness.  In claim ten, Petitioner similarly complains that his attorney failed to investigate Captain Perry's history with the Gallia County Sheriff's Office to determine that Perry was "not a corrupt cop" prior to making the decision to call Perry as a defense witness.  *See Amendment to § 2255 Petition*, Doc. 146.  Petitioner states that he told Attorney Warshaw he did not want Captain Perry to testify as a defense witness unless Perry would admit he was a corrupt cop and had planted the drugs.  *Affidavit of Jonnie White*.

The testimony of Captain Perry was brief.  Perry testified as a defense witness.  He had obtained the search warrant on the home of Petitioner and Cordell.  The Sheriff's Office had fired Perry for "dishonesty, neglect of duty, misfeasance, nonfeasance, failure to maintain good behavior and failure to responsibly perform duties." *Trial Transcript*, at 392.  On cross examination, Captain Perry testified he had challenged his firing, and had been reinstated with back pay.  He obtained the search warranted based on Jerry Abbott's purchase of crack cocaine from Shawnda Cordell.  Perry had observed that sale of drugs by Cordell and used this information in an affidavit to obtain a warrant to search the house.  *Id*. at 393.  He also executed the search warrant, finding over 400 grams of crack cocaine inside of a charcoal grill located outside of the house.  *Id*. at 394.

14

The record fails to support Petitioner's allegation that defense counsel did not know the circumstances surrounding Captain Perry's firing. The government had filed a pre-trial motion in *limine* requesting that the defense be prohibited from questioning Captain Perry. This motion contained all relevant information regarding Perry's job history, including his settlement with his employers. *See* Doc. 36. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see also Boyle v. McCain*, 544 F.3d 1132, 1139 (10th Cir. 2008)("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney").

Claims two and ten are without merit.

## CLAIM THREE

In claim three, Petitioner asserts he was denied effective assistance of counsel because his attorney failed to object to the Court taking judicial notice that Gallia County is located within the Southern District of Ohio after the prosecution failed to establish jurisdiction during their case-in-chief. Petitioner also complains that his attorney failed to object to jury instructions indicating Gallia County is located within the Southern District of Ohio and informing the jury that proof that the crime charged took place in the Southern District of Ohio need only be established by a preponderance of the evidence. This claim plainly lacks merit.

Under Rule 201 of the Federal Rules of Evidence, a district court may take judicial notice at any stage of the proceeding, whether or not requested by the parties, of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201, Federal Rules of Evidence. The geographical location of

Gallia County as being within the jurisdiction of the Southern District of Ohio, Eastern Division is a fact properly the subject of judicial notice under Rule 201. "'[Geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial and thus it is within the general definition contained in Fed.R.Evid. 201(b). . . . " *United States v. Bello*, 194 F.3d 18, 23 (6th Cir. 1999)(quoting *United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980); *United States v. Blunt*, 558 F.2d 1245, 1247 (6th Cir. 1977)). The record likewise fails to reflect that the jury instructions were improper. "Venue need only be proven by a preponderance of the evidence," *United States v. Cooper*, 40 Fed.Appx. 39, unpublished, 2002 WL 847993, at *40 (6th Cir. April 30, 2002)(citation omitted). The Court properly so instructed the jury. *Trial Transcript*, at 464.

Claim three is without merit.

## CLAIM FOUR

In claim four, Petitioner asserts he was denied effective assistance of counsel because his attorney waived opening statement. A defense attorney's decision regarding whether or not to present an opening statement typically is considered a "mere matter of trial tactics" that does not establish incompetence or unreasonable performance under *Strickland*. *Moss v. Hofbauer*, 286 F.3d 851, 863 (6th Cir. 2002)(citing *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985); *United States v. Salovitz*, 701 F.2d 17, 20-21 (2d Cir. 1983); *Nguyen v. Reynolds*, 131 F.2d 1340, 1350 (10th Cir. 1997); *see also Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004)(same).

Prior to calling Captain Perry as a defense witness, defense counsel explained to the jury that he had not presented an opening statement at the start of the case, but reserved his opening statement "because I wanted you to get a feeling for the kinds of people that would be testifying in this case:

cooperating witnesses, dope user witnesses, long time addicts, people that have a lot to gain. In other words, people that just stepped out of the sewer." *Trial Transcript*, at 389.

> What is a sad thing in this case is that the person you are going to hear from next is a law enforcement person who you use your own judgment on and decide whether or not you think his testimony is believeable. He in fact is the one that actually ran this entire investigation.

*Id.* This Court cannot conclude that defense counsel's strategic decision to reserve opening statement prior to calling Captain Perry as a defense witness was constitutionally unreasonable. Moreover, Petitioner has failed to establish prejudice from counsel's decision, as that term is defined under *Strickland*.

Claim four is without merit.

## CLAIM FIVE

In claim five, Petitioner asserts he was denied effective assistance of counsel because his attorney agreed that prosecution witnesses would not be permitted to testify they received inculpatory information from Petitioner during the time he was incarcerated with them. Petitioner contends that defense counsel thereby built up the credibility of the prosecution witnesses.

The record fails to support Petitioner's allegations. Prosecution witnesses testified regarding their criminal history, their guilty plea agreements with the government, and thus their motivation for testifying against Petitioner. John Rees testified he had been arrested for transporting 100 grams of crack cocaine from West Virginia to Gallipolis. *Trial Transcript*, at 201. He had pleaded guilty to possession of 100 grams of crack cocaine. He faced 20 years to life imprisonment and a mandatory minimum term of ten years incarceration. *Id.* at 202-203. The probation officer was

recommending Rees be sentenced to 120-135 months. *Id*. at 203. The only way Rees could obtain

a lesser sentence was to cooperate with the government by testifying against Petitioner. *Id*. at 203.

Rees had a prior conviction on attempting to deliver 1 to 3 kilograms of cocaine for which he served

41 months in prison and a conviction on possession of marijuana and a hallucinogen. *Id*. at 206.

Defense counsel did not improve the credibility of prosecution witnesses by agreeing they

should not mention they were incarcerated with Petitioner during the time he made incriminating

statements to them. Defense counsel cross examined Rees on his motivation to testify against

Petitioner, his prior criminal history, his daily crack habit and history of crack use; the fact that most

of his friends were crack dealers or users. On cross examination, Rees stated that when he bought

drugs from Shawnda Cordell, Petitioner was not always present. *Id*. at 220-228.

Dujuan Alexander was in custody at the time he testified against Petitioner on charges

resulting from his sale of crack cocaine. *Id*. at 266-67. Alexander had pleaded guilty to conspiracy

to distribute more than five but less than 20 grams of crack cocaine. He faced five to forty years in

prison and a minimum term of five years. *Id*. at 269. Alexander had entered into a plea agreement

with the government whereby he was attempting to get a reduction for his role in the offense. *Id*.

at 270-71. He was facing more than five years. The only way to get his sentence below five years

was to obtain a motion for reduction of his sentence by the government based on his cooperation,

which included testifying against Petitioner. *Id*. at 272-73. Prior to his arrest, Alexander had never

met the Petitioner. *Id. at* 274. According to Alexander, Petitioner told him the house he lived had

been raided and police found drugs in his barbecue grill. *Id*. at 276. Defense counsel cross

examined Alexander on his probation violations for using marijuana. Alexander also admitted on

cross examination that he had never seen Petitioner or Cordell selling drugs. *Id*. at 278.

Shawnda Cordell was in federal custody at the time she testified against Petitioner. *Id.* at 293-94. At the time she testified, she had been incarcerated for eleven months for selling crack cocaine. She had pleaded guilty pursuant to the terms of a written plea agreement to conspiracy to traffic in drugs. *Id.* at 294. She faced ten years to life, and a mandatory minimum term of ten years incarceration. *Id.* The probation officer had recommended she serve 135 to 168 months incarceration. *Id.* at 296. The only way she could obtain a lesser sentence was by cooperating with the government by testifying against Petitioner. *Id.* at 296-97. Defense counsel cross examined Cordell regarding her history of selling drugs and the fact that she had lied to police. *Id.* at 335-36. She admitted that she would do "anything, anything" to be able to see her children again, and to get out of jail as early as possible. *Id.* at 337. He cross examined her regarding the sentence she was facing and the fact that her sentence would be substantially reduced by testifying against Petitioner, which would get her to her children a whole lot faster. *Id.* at 337-38. That was her goal. *Id.* at 338. She sold crack cocaine to a lot of people in the area she lived. *Id.* at 339.

It was made clear to the jury that all prosecution witnesses were incarcerated, facing lengthy sentences, and all testifying against him pursuant to the terms of their negotiated plea agreements, whereby they stood to obtain substantially reduced sentences in return for testifying against Petitioner. Under these circumstances, Petitioner cannot establish any prejudice from the fact that the jury did not learn that prosecution witnesses had been incarcerated with him.

Claim five is without merit.

## CLAIM SEVEN

In claim seven, Petitioner asserts that he was denied effective assistance of counsel because his attorney failed to present a defense. Petitioner argues that, although his attorney attacked the

19

credibility of prosecution witnesses, this did not constitute an affirmative defense. Petitioner argues that defense counsel failed to present a defense because Captain Perry was not the "dirty cop" he had anticipated. *See Traverse*. Petitioner complains that his attorney failed to present any defense witnesses, challenge the evidence against him, or subject the prosecution's case to adversarial testing. Petitioner contends that counsel's representation of him was "but a mere sham." *Petition,* at 24.

Upon review of the record, this Court is not persuaded by Petitioner's argument. Aside from Captain Perry, Petitioner does not indicate the identity of any witnesses his attorney failed to call who would have assisted the defense. Moreover, defense counsel argued the case involved credibility of informants, co-conspirators, people with felony records and dishonest police officers. He argued that, in view of the untrustworthiness of prosecution witnesses, the prosecution had not met its burden of proving beyond a reasonable doubt the charges against Petitioner. He pointed out that no drugs had been found on any property belonging to Petitioner, and no fingerprints produced showing he had touched any drugs. *Trial Transcript*, at 426-433. As discussed, defense counsel cross examined prosecution witnesses regarding their drug usage, criminal pasts and motives for testifying against Petitioner. These actions constituted the presentation of Petitioner's defense. The fact that defense counsel was unsuccessful in obtaining an acquittal does not amount to constitutionally ineffective assistance of counsel under *Strickland*.

Claim seven is without merit.

## CLAIM EIGHT

In claim eight, Petitioner asserts he was denied effective assistance of counsel because his attorney failed to object to the prosecutor's statement in opening argument, "What the government

expects the evidence will show through the testimony of the various witnesses is as long ago as four or five years ago, 2001, 2002, Jonnie White first traveled from Detroit to Gallipolis." *Trial Transcript,* at 126. Petitioner argues that the prosecutor thereby improperly referred to facts outside the scope of the conspiracy charged, as the superseding indictment charges him with conspiring to distribute more than 50 grams of crack cocaine from on or about June 2004 through and including July 25, 2005, the exact dates being unknown. Doc. 14. Petitioner also asserts that Teresa Abbott and John Rees improperly testified that Petitioner sold them crack cocaine during the years of 2002-2003 and or prior to 2002 on this same basis.[1] Petitioner's argument is not well taken.

The prosecutor's statement that Petitioner first traveled from Detroit to Gallipolis sometime in 2001 or 2002, is admissible to show how Petitioner came to be in Ohio and how the conspiracy developed. Testimony by prosecution witnesses regarding when and how they met Petitioner likewise is not improper. *See, e.g., United States v. Enright*, 579 F.2d 980, 988 (6th Cir. 1978)(evidence of conspirator's actions prior to beginning of conspiracy alleged in indictment admissible to show motive or intent). Moreover, the indictment need not allege the exact date proven at trial. *United States v. Benson*, 591 F.3d 491 (6th Cir. 2010)(citing *Ledbetter v. United States*, 170 U.S. 606, 612 (1898). Additionally, where, as here, the indictment uses "on or about" language, the government may properly introduce evidence of dates "reasonably near" the dates alleged in the indictment. *Id.* (quoting *United States v. Hettinger*, 242 Fed.Appx. 287, 295 (6th Cir. 2007)(citing *United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir. 1989)).

---

[1] Teresa Abbott testified that she first met White, known to her as "Cash," in late 2003 or early 2004. *Trial Transcript*, at 148. John Abbott began using cocaine and crack cocaine in 2004, buying from several sources including Petitioner. *Id.* at 172-74. Rees first met Petitioner in late 2003, approximately two years before he was arrested in August 2005. He dealt with Petitioner throughout 2004-2005. *Id.* at 201, 208-09.

Claim eight is without merit.

## CLAIM NINE

In claim nine, Petitioner asserts he was denied a fair trial due to the cumulative errors of defense counsel. For the reasons discussed, Petitioner has failed to establish defense counsel acted improperly or performed in a constitutionally unreasonable manner.

Claim nine is without merit.

## CLAIM SIX

In claim six, Petitioner asserts he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that United States Sentencing Guideline Amendment 709 applied to Petitioner's sentence, and he should be re-sentenced. He maintains that his prior criminal history score improperly included his prior 1997 conviction on speeding, obstruction, no license, and giving a false name and date of birth, and his 2002 conviction on false information and drug abuse under U.S.S.G. § 4A1.2(c)(1).[2]  Effective November 1, 2007, Amendment 709 changed the definitions and instructions for computing a criminal defendant's prior criminal history score under U.S.S.G. § 4A1.2. See U.S.S.G. § 4A1.2(c)(1)(2007), Historical Note, 2007 Amendments, Appendix C, Amendment 709. At the time Petitioner was sentenced, in October 2006, the instructions for determining whether a prior misdemeanor conviction was included, indicated that "[s]entences for misdemeanor and petty offenses are counted. . . only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense: Careless or reckless driving,

---

[2] Petitioner was assessed one criminal history point for each of these prior convictions. *See PreSentence Investigation Report*, at ¶¶46, 49.

contempt of court, disorderly conduct or disturbing the peace, driving without a license or with a revoked or suspended license, false information to a police officer, fish and game violations, gambling, hindering or failure to obey a police officer, insufficient funds check, leaving the scene of an accident, local ordinance violations. . . non-support, prostitution, resisting arrest, trespassing. U.S.S.G. § 4A1.2(c)(1)(2006 version of the United States Sentencing Guidelines Manual). Amendment 709 changed this language to indicate that "[s]entences for misdemeanor and petty offenses are counted. . . only if (A) the sentence was a term of probation of *more than* one year or a term of imprisonment of at least thirty days. . . ." U.S.S.G. § 4A1.2(c)(1)(2007 version of the United States Sentencing Guidelines Manual). Petitioner, however, was sentenced long prior to the effective date of Amendment 709, and the amendment has not been made retroactively applicable. *Carson v. United States*, Nos. 1:04 CR 626, 1:07 CV 3718, 2010 WL 2802958, at *2-3 (N.D. Ohio July 14, 2010)(because the changes made by Amendment 709 are substantive and because the Sentencing Commission did not choose to apply these changes retroactively, habeas court is without authority to apply the changes retroactively in response to a motion under 28 U.S.C. § 2255); *see also United States v. Vassar*, 346 Fed.Appx. 17, unpublished, 2009 WL 2959290, at *10 (6th Cir. Sept. 16, 2009)(Amendment 709 is not to be retroactively applied to calculate a criminal defendant's criminal history score). Petitioner, therefore, has failed to establish the ineffective assistance of appellate counsel on this basis.

Claim six is without merit.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14)

days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


**DATE:  October 26, 2011**                         __/s/  *Elizabeth A. Preston Deavers*__
                                                  **ELIZABETH A. PRESTON DEAVERS**
                                                  **UNITED STATES MAGISTRATE JUDGE**