IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JONNIE H. WHITE,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL CASE NO. 2:10-CV-070
CRIMINAL CASE NO. 2:05-CR-174
JUDGE ALGENON L. MARBLEY
Magistrate Judge Elizabeth A. Preston Deavers

## OPINION AND ORDER

On November 18, 2013, after an evidentiary hearing, the Magistrate Judge recommended that the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 be granted on Petitioner's claim that he was denied effective assistance of counsel during plea negotiations, and that the government be given thirty (30) days to offer Petitioner the opportunity to enter a guilty plea under the terms of the March 22, 2006 plea agreement. Doc. 177. This matter now is before the Court on the government's *Objection t*o the Magistrate Judge's *Report and Recommendation,* Doc. No. 179, and Petitioner's *Reply in Opposition*, Doc. No. 180. For the reasons that follow, the *Objection* of the United States of America, Doc. No. 177, is **OVERRULED.** The *Report and Recommendation* is **ADOPTED** and **AFFIRMED.** The petition for a writ of habeas corpus is conditionally **GRANTED** on Petitioner's claim that he was denied effective assistance of counsel during plea negotiations. The government has thirty (30) days to offer Petitioner the opportunity to enter a guilty plea under the terms of the March 22, 2006 plea agreement. The Court will thereafter set the case for plea and sentencing hearings.

**Respondent's Objections:**

Respondent objects to the Magistrate Judge's recommendation that the petition for a writ of habeas corpus conditionally be granted on Petitioner's claim that he was denied effective assistance during plea negotiations. Respondent argues that Petitioner's counsel's performance did not fall below objectively reasonable standards. In support of this contention, Respondent notes that Petitioner affirmed that his decision to proceed to trial was knowing and voluntary.

Respondent also argues that the Magistrate Judge incorrectly concluded that Attorney Thomas Warshaw performed in a constitutionally unreasonable manner by failing to pursue a guilty plea offer from the government. Relying upon a case from the Fourth Circuit Court of Appeals, Respondent asserts that counsel has no duty to pursue a plea offer when a defendant indicates that he is unwilling to plead guilty. Respondent further asserts that Petitioner indicated an unwillingness to plead guilty by failing to complete a change of plea hearing after signing two plea agreements. Additionally, Respondent argues that Attorney Warshaw's failure to pursue a third plea agreement was not deficient because there is no evidence demonstrating that the government would have extended a third plea offer, or that Petitioner would have accepted a third offer if one had been extended. Respondent also objects to the Magistrate Judge's proposed remedy because there is no record evidence that the government would have extended a third plea offer.

Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. Upon review of the record, and for the reasons set forth in the Magistrate Judge's *Report and Recommendation*, Respondent's objections are not well taken.

**Counsel's Ineffective Performance:**

As set forth by the Magistrate Judge, a criminal defendant is entitled to the effective assistance of counsel during the plea negotiation process. *Lafler v. Cooper,* 132 S.Ct. 1376, 1384 (2012). "As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye,* 132 S.Ct. 1399, 1408 (2012). In addition to conveying offers, the United States Court of Appeals for the Sixth Circuit has described defense counsel's obligation to advise a client during plea negotiations:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.

*Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003)(citing *United States v. Day*, F.2d 39, 43 (3rd Cir. 1992)).

Respondent incorrectly characterizes Petitioner's two attempts to go forward with changing his plea as unwillingness to enter into an agreement with the government. Petitioner signed a plea agreement in February of 2006. He changed that initial guilty plea when he appeared before the District Judge on February 28, 2006, not because he was unwilling to enter into an agreement to plead guilty, but because he did not understand the terms of the plea agreement he had signed. *Evidentiary Hearing Transcript*, PageID #1234. The government and Petitioner subsequently entered into a second plea agreement. At a March 22, 2006 change of plea hearing before Magistrate Judge Abel, Petitioner admitted his guilt several times. The Court, however, refused to accept that second plea agreement after Petitioner indicated that he was not satisfied with the job that his attorney, Mr. Cooper, was doing. PageID #1238–39.

Thus, Petitioner did not exhibit an unwillingness to plead guilty. Rather, this Court refused to accept the March 22, 2006 plea agreement because Petitioner complained, in effect, that his counsel was ineffective.[1]

Respondent argues that Attorney Warshaw had no obligation to explain the terms of the prior plea agreements to Petitioner. The Magistrate Judge correctly concluded, however, that regardless of Mr. Cooper's conduct, Mr. Warshaw, had a separate and independent obligation to provide constitutionally effective performance once he accepted representation. As detailed by the Magistrate Judge, Mr. Warshaw failed to engage in meaningful discussions with his client. Mr. Warshaw met once, maybe twice with his client before proceeding to trial. PageID#1260. Mr. Warshaw told Petitioner what the "numbers would most likely be in terms of a plea" but Mr. Warshaw did not discuss the possibility of plea agreement with the government because he "was pretty well certain" that his client wanted to go to trial. PageID#1268, 1274. Mr. Warshaw based this summary conclusion, not on any meaningful discussions with Petitioner, but on his assumption that Petitioner was unhappy with his prior counsel because prior counsel wanted Petitioner to plead and Petitioner was not amenable to pleading. PageID#1268, 1270. Indeed, Mr. Warshaw testified that Petitioner fired his prior counsel because he wanted to go to trial and his lawyers wanted him to plead. PageID#1270. As noted, however, Petitioner never displayed

---

[1] The record in this case reflects that Petitioner was dissatisfied with Mr. Cooper's performance because Mr. Cooper failed to explain to Petitioner how the drug amounts and relevant conduct impacted Petitioner's sentence under the second plea agreement. PageID#1234–35; 1238–40. Respondent states that Mr. Cooper's performance cannot be the basis for an ineffective assistance claim because Mr. Cooper negotiated two plea agreements and because neither Petitioner's § 2255 Motion nor his post-evidentiary hearing brief alleges deficient performance by Cooper. (ECF No. 179, p.2-3). Petitioner's § 2255 Motion was filed *pro se* and is liberally construed. Moreover, Petitioner's post-evidentiary hearing brief devotes considerable time describing how Mr. Cooper failed to explain the ramifications of either plea agreement to him. (ECF No. 175, p.9–11).

an unwillingness to plead guilty. Rather, this Court refused to accept Petitioner's guilty plea in light of Petitioner's dissatisfaction with Mr. Cooper's performance and his obvious confusion about the drug amounts and relevant conduct provisions in the plea agreement.[2]

Respondent also asserts that Mr. Warshaw satisfied any obligations to explain the terms of the prior plea agreements by providing Petitioner with some "ballpark figures" about the difference in possible sentence exposure for pleading guilty as opposed to going to trial. PageID# 1261. But as the Magistrate Judge explained, the Court has no doubt that Petitioner received little or no substantive or qualitative advice regarding the potential penalties under the second plea agreement versus going to trial. The Magistrate Judge indicated, and the record reflects that Mr. Warshaw never explained the precise terms of the government's March 22, 2006 plea agreement, the government's significant evidence against Petitioner, or the advisability of going to trial. PageID#1261–1262, 1267, 1270. The Magistrate Judge also correctly questioned how Mr. Warshaw could advise Petitioner regarding "ballpark" numbers that might apply to a potential plea if Mr. Warshaw never once spoke to the Assistant United States Attorney regarding the possibility of a renewed or revised offer. PageID# 1268, 1274.

Contrary to Respondent's claims, the Magistrate Judge did not find that Mr. Warshaw rendered ineffective assistance because he failed to engage in plea negotiations. This Circuit recognizes that "adequate representation by a criminal defense attorney entails exploring possible plea negotiations" and that counsel may have a duty to try and negotiate a plea in some circumstances. *Newman v. Vasbinder*, No. 05-2718, 2008 WL 150419, *2 (6th Cir. Jan. 16,

---

[2] Everyone familiar with this case, except Petitioner's attorney, Mr. Warshaw, appears to understand that Petitioner was confused about the provisions of the March 22, 2006 plea agreement. *See United States v. White*, No. 06-04449, 2009 WL 196548, at *4 (6th Cir. Jan. 30, 2009) (noting that Petitioner "clearly misunderstood the nature of the offense to which he was pleading.").

2008). The Magistrate Judge nevertheless elected not to resolve the factual dispute about whether or not Petitioner asked Mr. Warshaw to explore plea negotiations and focused instead on Mr. Warshaw's failure to consult with and advise Petitioner.

The Magistrate Judge found that Mr. Warshaw failed to consult with Petitioner about his displeasure with prior counsel, failed to determine why the Court refused to accept Petitioner's March 22, 2006 guilty plea,[3] and most notably, failed to discuss with Petitioner whether trying the case was advisable given the strength of the government's case. The Magistrate Judge concluded that these shortcomings were analogous to a failure on counsel's part to investigate. Cases involving counsel's failure to investigate make it clear that although courts must defer to counsel's strategic investigative choices, deference is unwarranted when a failure to investigate is not based on informed professional judgment. *Dando v. Yukins*, 461 F.3d 791, 798–99 (6th Cir. 2006). Here, the Magistrate Judge concluded that Mr. Warshaw did not make an informed decision to forgo consulting with his client about these issues. He simply assumed that he knew Petitioner's goal (to go to trial) and why Petitioner's prior attempts to plead guilty were fruitless (because Petitioner rejected the plea agreements).

The United States Supreme Court has explained that although "the standard for counsel's performance is not determined by reference to codified standards of professional practice, those standards can be important guidelines." *Frye*, 132 S.Ct. at 1408. The American Bar Association recommends that lawyers shall "reasonably consult with [a] client about the means by which the client's objectives are to be accomplished." ABA Model Rules of Professional Conduct

---

[3] It appears that Mr. Warshaw did not know that this Court, not Petitioner, refused to accept the second plea agreement. A review of the record would have made that clear to Mr. Warshaw and revealed that this Court rejected Petitioner's attempt to plead guilty because he did not fully understand the terms of the March 22, 2006 plea agreement and was dissatisfied with his counsel's representation.

1.4(a)(2). This obligation requires counsel to determine a client's objectives. Mr. Warshaw never consulted with Petitioner about whether he wanted to go to trial and simply proceeded on the assumption that Petitioner had no interest in entering a guilty plea. This falls far short of professional standards.

Respondent points out that there is no record evidence indicating that the March 22, 2006 plea offer remained in effect or that the government would have extended another plea offer after the March 22, 2006 hearing. That absence is telling. The record does not reflect the status of the second plea agreement after March 22, 2006 precisely because Mr. Warshaw admittedly failed to determine the status of any proceedings that took place before he was retained on April 18, 2006. PageID#1268, 1274. An "attorney has a clear obligation to fully inform her client of the available options." *Smith*, 348 F.3d at 552. That obligation requires counsel to determine what options exist. *Id.; see also,* ABA Standards for Criminal Justice, Pleas of Guilty 14–3.2(b) (3d ed. 1999) ("To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available... .").

The Magistrate Judge found that these failures appeared to be part of a broader pattern of neglect. She noted, and the record reflects that Mr. Warshaw spoke with Petitioner once, perhaps twice, before trial. PageID#1260. During those conversations, Mr. Warshaw never determined why Petitioner fired previous counsel or if Petitioner wanted to go to trial and instead simply assumed that Petitioner was not amenable to pleading. PageID#1260–1261, 1270, 1274. Mr. Warshaw did not contact the United States Attorney's Office to determine the status of any plea negotiations because, he "guessed," that he was pretty well certain that Petitioner wanted to go to trial. PageID#1268, 1274. Because he did not know the status of any prior plea negotiations, Mr. Warshaw was obviously unable to discuss the terms of the prior plea

agreements with Petitioner or advise Petitioner about any "numbers" that might apply to a potential plea. Mr. Warshaw never advised Petitioner about the strength of the government's case, never discussed Petitioner's possible sentence exposure outside of a "ballpark" range, and never counseled Petitioner about Petitioner's purported "desire" to go to trial. PageID#1260–61, 1267.[4] In sum, this is not the case in which the Court is assuming that counsel was ineffective where the record is silent. Indeed, this record is replete with examples of professional neglect. *Cf. Titlow v. Burt*, 134 S.Ct. 10, 17–18 (2013) (holding that an absence of evidence of adequate performance is not sufficient to overcome the strong presumption that counsel's assistance is effective).

**Prejudice to Petitioner:**

The Magistrate Judge correctly concluded that these failures prejudiced Petitioner. The test for prejudice is whether there is a reasonable probability that, but for counsel's omissions, the results of the proceedings would have been different. *Strickland v. Washington*, 104 S.Ct. 2052, 2068 (1984). Where having to stand trial is the prejudice alleged,

> defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court *(i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385. As detailed by the Magistrate Judge, Petitioner has made these showings.

---

[4] Mr. Warshaw even abandoned Petitioner during Petitioner's presentence interview. PageID# 1271.

Petitioner's two prior attempts to enter a guilty plea, in addition to his profession of guilt at the March 22, 2006 hearing, all support his contention that he wanted to plead guilty, and would have done so, had he been properly advised by defense counsel. The record bears out that there are no intervening circumstances suggesting that the prosecution would have withdrawn the plea agreement.[5] Moreover, there is a reasonable probability that the Court would have accepted the terms of the March 22, 2006 plea agreement. That plea agreement was rejected by this Court because Petitioner complained about his counsel's performance and was clearly ill-informed about the terms of the plea agreement. Petitioner was ultimately subjected to a stricter sentence after trial than he would have been subjected to under the terms of the March 22, 2006 plea agreement. Indeed, Petitioner was convicted on both Counts 1 and 5 of the Superseding Indictment which charged him with conspiracy to distribute and possession with the intent to distribute more than fifty grams of crack cocaine, instead of only Count 1 to which the plea agreement referred.[6]

**Petitioner's Remedy:**

This case presents somewhat unique circumstances. This is not an instance where counsel neglected to inform Petitioner about the existence of a plea offer, such as in *Missouri v. Frye,* or an instance where counsel affirmatively misadvised Petitioner to reject a favorable plea

---

[5] For instance, the March 22, 2006 plea agreement was not offered in exchange for Petitioner's cooperation in a case that was ultimately resolved without Petitioner's assistance. *Compare Titlow, v. Burt*, 680 F.3d 577, 592 (6th Cir. 2012), *rev'd on other grounds by* 134 S.Ct. 10 (2013).

[6] Additionally, under the terms of the March 22, 2006 plea agreement, the parties agreed that Petitioner did not have a supervisory role, that a two-offense level increase for a firearm enhancement would not apply and that Defendant had accepted responsibility. The Government also agreed that it could only prove independent of Petitioner's proffer that the relevant conduct was 486.69 grams of cocaine base. At sentencing, however, Petitioner received an increase for a supervisory role, a firearm enhancement, and of course received no credit for acceptance of responsibility. The Court also found Petitioner liable for 853.06 grams of crack as relevant conduct.

agreement, such as in *Lafler v. Cooper*. Rather, this is an instance where Petitioner's counsel, Mr. Cooper, failed to adequately explain the terms of the March 22, 2006 plea agreement to Petitioner and thus the Court refused to accept the Petitioner's plea of guilty and the correspondent agreement. Thereafter, new counsel never explained any terms to Petitioner or advised Petitioner about the strength of the government's case or the advisability of pursuing a plea versus proceeding to trial. Mr. Warshaw did not do so on the mere assumption that Petitioner wanted to go to trial and was uninterested in pleading guilty. Counsel simply concluded that he did not need to consult with his client about his goals or counsel him about the advisability of proceeding to trial because he believed that was Petitioner's position. Although the ultimate decision to go to trial must be made by a criminal defendant, a defendant relies upon counsel's expertise so that the decision to go to trial is fully informed. *See Smith*, 348 F.3d at 552–53.

Yet Petitioner's case is similar to *Missouri v. Frye* and *Lafler v. Cooper* in that Petitioner proceeded to trial after receiving ineffective assistance of counsel. Under these unique circumstances, the Court finds that the Magistrate Judge correctly determined that the proper remedy is to require the government to reoffer the March 22, 2006 plea proposal. *Cf. Lafler*, 132 S.Ct. at 1389 (explaining that when ineffective assistance results in a defendant standing trial and receiving a greater sentence, proper remedy is resentencing or requiring the prosecution to reoffer a plea if resentencing cannot fully redress a defendant's constitutional injury). In crafting this remedy, the Magistrate Judge properly noted Petitioner's two prior attempts to change his plea and his expressed willingness to accept responsibility for his conduct despite not understanding the relevant conduct provisions of the plea agreements. *See id.* She also correctly noted that the remedy selected neutralizes the Constitutional taint caused by counsel's failings

without requiring the government to incur the expense of conducting a new trial. *See id.* After hearing from the parties, the Court will determine whether to vacate the conviction from trial and accept the plea agreement or leave the conviction undisturbed. *See id.*

Respondent's *Objection* of the United States of America, Doc. No. 177, is **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**.

The petition for a writ of habeas corpus hereby conditionally is **GRANTED** on Petitioner's claim that he was denied effective assistance of counsel during plea negotiations. The government has thirty (30) days to offer Petitioner the opportunity to enter a guilty plea under the terms of the March 22, 2006 plea agreement. The Court will hear argument and set the case for plea and sentencing hearings.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
United States District Judge